IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| RUBEN IZQUIERDO and<br>MARIA CORDOVA-BATISTA<br><br>*Plaintiffs,*<br><br>v.<br><br>TITUS COUNTY (SHERIFF'S OFFICE),<br>CHRIS M. BRAGG, BRENT SMITH,<br>AARON BAXTER, KENNETH WILSON,<br>TRACY HAYES, WAYNE MINOR,<br>MARCUS CARLOCK, and JOHN<br>LIVINGSTON<br><br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action. No. _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

Mr. Ruben Izquierdo ("**Izquierdo**") and Ms. Maria Cordova-Batista ("**Cordova**") (collectively, Izquierdo and Cordova may be referred to as "**Plaintiffs**") file this Original Complaint complaining of the Titus County Sheriff's Department (the "**Department**") and several individual members of the Department, including Chris M. Bragg ("**Bragg**"), Brent Smith ("**Smith**"), Aaron Baxter ("**Baxter**"), Kenneth Wilson ("**Wilson**"), Tracy Hayes ("**Hayes**"), Wayne Minor ("**Minor**"), Marcus Carlock ("**Carlock**"), and John Livingston ("**Livingston**") (the Department, Bragg, Smith, Baxter, Wilson, Hayes, Minor, Carlock, and Livingston may collectively be referred to as "**Defendants**") (Bragg, Smith, Baxter, Wilson, Hayes, Minor, Carlock, and Livingston may collectively be referred to as the "**Individual Defendants**").

## I. PARTIES

Plaintiffs

1. Plaintiff Ruben Izquierdo is an individual who is a resident of the State of Texas and of Titus County.

2. Plaintiff Maria Cordova-Batista is an individual who is a resident of the State of Texas and of Titus County.

Defendants

3. Defendant Titus County is a political subdivision of the State of Texas, and may be served with citation by serving the county judge.[1]

4. Chris M. Bragg is an individual resident of the State of Texas and an employee of the Department, and may be served with citation wherever he may be found.

5. Brent Smith is an individual resident of the State of Texas and an employee of the Department, and may be served with citation wherever he may be found.

6. Aaron Baxter is an individual resident of the State of Texas and an employee of the Department, and may be served with citation wherever he may be found.

7. Kenneth Wilson is an individual resident of the State of Texas and an employee of the Department, and may be served with citation wherever he may be found.

8. Tracy Hayes is an individual resident of the State of Texas and an employee of the Department, and may be served with citation wherever he may be found.

9. Wayne Minor is an individual resident of the State of Texas and an employee of the Department, and may be served with citation wherever he may be found.

10. Marcus Carlock is an individual resident of the State of Texas and an employee of

---

[1] See CPRC §17.024(a).

the Department, and may be served with citation wherever he may be found.

11. John Livingston is the Chief Deputy of the Titus County Sheriff's Office, is an individual resident of the State of Texas and an employee of the Department, and may be served with citation wherever he may be found.

## II. FACTS

12. On Wednesday, September 12, 2012, nine officers of the Department, including the Individual Defendants as well as Deputy Toby Bunow, arrived at the residence of the Plaintiffs located at 401 West 7th Street in Mount Pleasant, Titus County, Texas (the "Residence") to execute a Narcotics Search Warrant (the "Warrant").

13. Without knocking and with weapons drawn, the Individual Defendants broke down the front door of the Residence and entered the Residence.

14. Plaintiffs, who speak very little English, emerged from where they were (Cordova first, and then Izquierdo), at which time the Individual Defendants immediately began an assault on both Plaintiffs.

15. Hayes immediately tackled Cordova - who was at the time battling cancer and undergoing chemotherapy – with no provocation. When Izquierdo attempted to help Cordova, his wife, Izquierdo was repeatedly assaulted by numerous methods.

16. First, Izquierdo was tackled to the ground by Carlock and Smith.

17. Carlock subsequently used a Taser on Izquierdo – not once, but at least three separate times.

18. Wilson and Smith repeatedly beat Izquierdo with the end of a metal flashlight on his arms, shoulder, and head. Izquierdo was also beaten with a police baton.

19. Neither Izquierdo nor Cordova ever attempted in any way to resist arrest.

20. Neither Izquierdo nor Cordova attempted to in any way fight with the Individual Defendants, nor did either attempt to use any weapons against Individual Defendants.

21. Izquierdo is a small-in-statute man incapable of overpowering multiple armed officers – even if he wanted to – which he did not and never attempted to. Cordova is similarly incapable of restraining one officer, much less nine.

22. Bragg, Smith, Baxter, Wilson, Hayes, Minor, and Carlock each filed reports/narratives of the incident after the fact. In the narratives – which are all conveniently consistent – despite the fact that much of the narratives were based on other reports rather than on personal knowledge – the Individual Defendants misrepresented facts and in some cases provided absolute falsehoods regarding the events that occurred.

23. Attempts by Plaintiffs to communicate with the Individual Defendants and with each other were mislabeled "yelling" and "resisting arrest."

24. Plaintiffs' expressions of pain resulting from the assaults by the Individual Defendants were characterized as attempts to strike officers and "aggressive resistance".

25. Despite the repeated use of catchphrases that Individual Defendants no doubt have been trained to use ("aggressive resistance"; "vigorous struggle"), not a single officer received any documented harm (other than assertions of being "exhausted" and "gasping for air" – no doubt from the vigorous and unnecessary assaults on Plaintiffs).

26. No narcotics were found at the Residence.

27. As a result of the assault on him, Izquierdo was taken to the Titus Regional Medical Center, where he was diagnosed with, among other things, multiple fractures of the shoulder and ribs, numerous contusions, dizziness caused by concussion, shortness of breath, headache, tenderness of the vertebrae, and subconjunctive hemorrhaging. Cordova was

diagnosed with facial swelling and other contusions – all as a result of the conduct of the Individual Defendants.

28. Plaintiffs have undergone extreme emotional distress as a result of the conduct of Defendants.

### III. CAUSES OF ACTION AGAINST DEFENDANT TITUS COUNTY

A. **Violation of Plaintiffs' Constitutional Rights – Liability under 42 U.S.C. §1983**

29. The paragraphs above are incorporated herein by reference as if fully set forth.

30. Acting "under color of state law," the Department, through its employees Bragg, Smith, Baxter, Wilson, Hayes, Minor, Carlock, and Livingston, violated the rights of Plaintiffs by unlawfully detaining them, physically assaulting them, and totally humiliating them in their own home.

31. Liability on the part of the Department is imposed for an act of an employee if the constitutional violation is due to an official action, policy, or custom.[2]

32. Bragg, Smith, Baxter, Wilson, Hayes, Minor, Carlock, and Livingston were acting pursuant to the Department's policy when they engaged in the illegal conduct described above. Indeed, Chief Deputy John Livingston – although conspicuously failing to file any report on the matter – supervised and witnessed the incident and conduct described above.

33. Section 1983 of Title 42, U.S.C., provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Colombia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . ."

---

[2] *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2036, 56 L.Ed. 2d 611 (1978).

As described above, the Department's employees, acting pursuant to Department policies, clearly violated Plaintiffs' rights, and §1983 provides for the redress of such violation.

34. The conduct of Individual Defendants, acting pursuant to Department's policies, violated Plaintiffs' constitutional rights under the due process clause of the Fourteenth Amendment to the U.S. Constitution (a violation of Plaintiffs' liberty interest in their bodily integrity), as well as under the Fourth Amendment right against unreasonable searches and seizures, as applied to the states by the Fourteenth Amendment.

35. Under the Federal Claims Exception, exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. §1983.[3]

## IV. CAUSES OF ACTION AGAINST INDIVIDUAL DEFENDANTS

### A. Violation of Plaintiffs' Constitutional Rights – Liability under 42 U.S.C. §1983

36. The paragraphs above are incorporated herein by reference as if fully set forth.

Liability under §1983 of Individual Defendants

37. In addition to or in the alternative to the liability imposed on the Department, liability lies with individual Defendants Bragg, Smith, Baxter, Wilson, Hayes, Minor, Carlock, and Livingston in their individual capacities under §1983.

38. Contrasted with liability imposed against a political subdivision or an official in his or her official capacity, personal-capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law.[4]

39. Whether or not Individual Defendants are ultimately found to have been acting pursuant to an official policy of the Department, Individual Defendants violated Plaintiffs' constitutional rights as enumerated above, and are therefore liable individually under §1983.

---

[3] *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982).
[4] *Kentucky v. Graham,* 473 U.S. 159, 165 (1985).

<u>Liability of Livingston in His Individual and Supervisory Capacities</u>

40. Based on Livingston's personal involvement in the events giving rise to the §1983 action, Livingston is liable in his individual capacity.

41. Additionally, Livingston supervised the conduct of the other Individual Defendants in his position as Chief Deputy. Livingston supervised the efforts of other Individual Defendants. His action or inaction in the supervision and/or control of his subordinates led to the constitutional violations noted above.

42. Livingston is therefore liable under §1983 in his capacity as a supervisor. Supervisory liability can be imposed without a determination of county liability. Supervisory liability runs against the individual, is based on his personal responsibility for the constitutional violation, and does not require any proof of official policy or custom as the "moving force" behind the conduct.[5]

### B. Assault by Infliction of Bodily Injury

43. The paragraphs above are incorporated herein by reference as if fully set forth.

44. The conduct of Individual Defendants constitutes assault by infliction of bodily injury in that:

> (1) The Individual Defendants acted intentionally, knowingly, or recklessly;
> (2) The Individual Defendants made contact with the Plaintiffs' person; and
> (3) The Individual Defendants' contact caused bodily injury to the Plaintiffs.

## V. DAMAGES ASSOCIATED WITH CAUSES OF ACTION

45. Under 42 U.S.C. §1983, three types of redress are available, as follows:

> (1) Money Damages, including attorneys' fees;[6]

---

[5] *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). Note that a supervisory liability theory is to be distinguished from a personal capacity theory insofar as, in cases where a supervisor is personally or directly involved in the constitutional violation, there's no need to resort to such a theory. As a result, based on Livingston's personal involvement in the constitutional deprivation, it is unnecessary to allege a supervisory theory on the part of Livingston (in spite of the fact that he indeed "supervised" Individual Defendants in their coordinated efforts).
[6] The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988, provides that a prevailing party in actions brought under specified

    (2) Injunctive Relief; and
    (3) A declaratory judgment.

Plaintiffs seek each of these alternative remedies – both individually and collectively, both under the authority of §1983 as well as under applicable state law. Plaintiffs have suffered damages in the way of physical pain, mental anguish, fear, personal humiliation, personal indignity, embarrassment, impairment of reputation, and physical and emotional distress caused by the Department's conduct.

46.     Punitive damages are available under §1983 where a Defendant's actions, as they are here, show that Defendant was "motivated by evil motive or intent" or involved "reckless or callous indifference" to a Plaintiff's rights.[7]

47.     Pursuant to Texas Civil Practice and Remedies Code §41.001(7), Defendants' conduct was performed with malice, as there is a clear specific intent by the Defendants to cause substantial injury or harm to Plaintiffs.

48.     Attorneys' fees should be awarded as exemplary damages in favor of Plaintiffs. Malicious conduct such as that carried out by Defendants is a type of aggravated behavior that supports an award of exemplary damages under Texas Civil Practice and Remedies Code §41.003(a)(2).

49.     The Civil Rights Attorney's Fees Awards Act of 1976[8] provides that a prevailing party in actions brought under specified civil rights statutes, including §1983, may be entitled to an award of attorney's fees as part of the costs of litigation.

## VI. DEMAND FOR JURY TRIAL

50.     Demand is hereby made for trial by jury in this matter.

---

civil rights statutes, including §1983, may be entitled to an award of attorney's fees as part of the costs of litigation.
[7] *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).
[8] 42 U.S.C. §1988.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Defendants be summoned to appear and answer, and upon trial of this matter, obtain the following relief:

1. Damages against the Department for violation of 42 U.S.C. §1983 for a sum within the jurisdictional limits of the Court;

2. Damages against Individual Defendants for violation of 42 U.S.C. §1983 and for assault for a sum within the jurisdictional limits of the Court;

3. Exemplary damages be awarded in favor of Plaintiffs in a sum within the jurisdictional limits of the Court;

4. Prejudgment interest as provided by law;

5. Costs of suit, including reasonable attorneys' fees, be awarded to Plaintiffs;

6. Postjudgment interest as provided by law; and

7. The Court award such other and further relief to which Plaintiffs may be justly entitled.

SIGNED this 11th day of September, 2014.

Respectfully submitted,

THE MITCHELL LAW FIRM, L.P.

8140 Walnut Hill Lane, Suite 301
Dallas, Texas 75231
(972)463-8417
Fax: (972)432-7540

By: /s/ Gregory W. Mitchell
Gregory W. Mitchell
State Bar ID: 00791285

ATTORNEY FOR PLAINTIFFS